**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AZIZ EL ABDI,

                **Plaintiff,**

-vs-                                       **Case No.  6:08-cv-292-Orl-19DAB**

MICHAEL CHERTOFF, EMILIO
GONZALEZ, KATHY REDMAN,
GARY GARMEN, MICHAEL B.
MUKASEY, ROBERT MUELLER,

                **Defendants.**

_____

## ORDER

This case comes before the Court on the Motion of Defendants to Dismiss (Doc. No. 13, filed May 27, 2008), and the Response of Plaintiff in Opposition to Defendants' Motion to Dismiss (Doc. No. 14, filed June 5, 2008).

**Background**

Plaintiff Aziz El Abdi filed this action to compel Defendants, federal officials in various agencies associated with immigration and naturalization,[1] to adjudicate his application for naturalization as an United States citizen.  (Doc. No. 1, filed Feb. 27, 2008.) Defendants have filed a Motion to Dismiss, raising the question of whether this Court has subject matter jurisdiction to

---

[1]     Emilio Gonzalez is the director of United States Citizenship and Immigration Services ("USCIS"), Kathy Redman is the Interim Field Office Director of the USCIS's Tampa office, Gary Garmen is the Field Office Director of the USCIS's Orlando office, Michael Chertoff is the Secretary of the Department of Homeland Security, Robert Mueller is the Director of the Federal Bureau of Investigation ("FBI"), and Michael B. Mukasey is the Attorney General of the United States.  (Doc. No. 1 ¶¶ 2-7.)  As these defendants appear to be sued in their official capacity, and Abdi has made no distinction between the actions of the various officials and the actions of their agencies, future references to the Defendants will be to their respective agency names (*e.g.*, the USCIS and the FBI).

review the pace of a naturalization adjudication where no initial interview has been conducted. (Doc. No. 13 at 1-7.)

The relevant facts are not in dispute. The USCIS is an agency within the Department of Homeland Security that performs many of the functions formerly entrusted to the Immigration and Naturalization Service. *See* 6 U.S.C. § 271(b). One such responsibility is to adjudicate applications for naturalization. *Id.*

An alien may apply for naturalization by filing a "Form N-400." 8 U.S.C. § 1445(a); 8 C.F.R. §§ 334.2, 316.4. After filing the form, the alien must provide a set of fingerprints to the USCIS, and the agency must then perform a background check consisting of both a fingerprint check and a name check. (Doc. No. 13-2 ¶ 6 (citing 1998 Department of Justice Appropriations Act, Pub. L. No. 105-119, Title I, 111 Stat. 2440, 2448).) The USCIS utilizes the FBI, an agency within the Department of Justice, to perform both stages of the background check. *See* 8 C.F.R. § 335.2(b). Once the FBI completes the background check, the USCIS schedules an interview with the alien. By regulation, however, the USCIS is not permitted to conduct an interview until the background check is complete.[2] *Id.*

Once the USCIS conducts an interview, the agency is permitted 120 days to determine whether the alien should be granted citizenship. Under 8 U.S.C. § 1447(b), the district court may assume jurisdiction over the adjudication if the USCIS fails to make a decision within the 120 day

---

[2]      Abdi contends that this regulation should be construed only to limit the agency's ability to schedule an interview before a fingerprint check is complete. (Doc. No. 14 at 11-13.) He argues that the agency is permitted to schedule an interview while the name check is pending. (*Id.*) The Court finds it unnecessary to evaluate Abdi's argument at this time because the distinction is immaterial to the issue of whether this Court has subject matter jurisdiction over Abdi's claims. *See infra* Section II(B).

period.  No specific federal statute provides the district court with jurisdiction in cases where the USCIS has not yet conducted the interview.

Abdi, a native and citizen of Morocco, filed a Form N-400 application for naturalization with the USCIS on July 3, 2006. (Doc. No. 1 ¶ 14.)  He received a filing receipt stating that he should expect to be notified for an interview within 365 days.  (*Id.* ¶ 16.)  On July 19, 2006, Abdi provided a set of fingerprints to the USCIS.  (*Id.* ¶ 17.)  The USCIS has not yet scheduled his interview.  (*Id.* ¶ 19.)  Representatives of the USCIS have told Abdi that the delay is due to an incomplete background check.  (*Id.*)  On February 27, 2008, Abdi filed this action to compel Defendants to proceed with the scheduling of an interview.  (*See* Doc. No. 1.)  On May 27, 2008, Defendants filed a Motion to Dismiss for Lack of Jurisdiction, and Abdi filed a Response in Opposition. (Doc. Nos. 13, 14.)

## Standard of Review

Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case.  *E.g.*, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).  The party asserting federal subject matter jurisdiction bears the burden of proving its existence.  *Id.*  In an ordinary civil action, the Federal Rules of Civil Procedure require a party to file "a short and plain statement of the grounds for the court's jurisdiction. . . ."  Fed. R. Civ. P. 8(a)(1).  If the complaint fails to conform to Federal Rule of Civil Procedure 8(a)(1), the defendant can move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1).  *E.g.*, *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001); *Anderson v. United States*, 245 F. Supp. 2d 1217, 1221 (M.D. Fla. 2002).

Under Federal Rule of Civil Procedure 12(b)(1), a party may bring either a facial or a factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a facial challenge, a court assumes that all of a plaintiff's allegations are true and determines whether a plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id*. at 1529. In a factual challenge, a court must determine if it has power to hear the case. *Id*. A court is not required to assume a plaintiff's allegations are true and is free to weigh the evidence and evaluate the merits of the jurisdictional claims. *Id*.

Although not explicitly stated, Defendants appear to bring a facial challenge to Abdi's claims. (*See* Doc. No. 13 at 1-7 (making arguments related to the legal sufficiency of the basis for subject matter jurisdiction stated in the Complaint).) Nevertheless, Defendants attached to their Motion the affidavit of a USCIS employee who attests to the reasonableness of the delay in processing Abdi's application. (Doc. No. 13-2.) This evidence appears to be included because some district courts have found the existence of subject matter jurisdiction to depend on whether the USCIS' delay in adjudication in that particular case is "reasonable." *See, e.g.*, *Eldeeb v. Chertoff*, No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231, at *20 (M.D. Fla. July 30, 2007) (determining that the pace of adjudication of an application for adjustment of status is discretionary and not subject to judicial review unless the delay is so unreasonable as to become a failure to act). For reasons discussed below, the Court does not find that the actual unreasonableness of the delay in this case is determinative of whether Congress has vested the Court with subject matter jurisdiction over Abdi's claim to review the pace of adjudication. Accordingly, the Court will analyze Defendants' challenge as a facial challenge.

**Analysis**

Before proceeding to the substance of the parties' arguments, the Court must note that several important legal points appear not to be in dispute. First, Abdi concedes that jurisdiction to hear this case does not exist under 8 U.S.C. § 1447(b).[3] (Doc. No. 14 at 2.) Further, Defendants do not appear to rely on any of the various "jurisdiction stripping" statues contained in the Immigration and Naturalization Act ("INA"). *See, e.g.*, *Ren v. Mueller*, 6:07-cv-790-Orl-19DAB, 2008 WL 191010, at *5 (M.D. Fla. Jan. 22, 2008) (discussing the application of 8 U.S.C. §§ 1252(a), (g) to a case where the USCIS failed to adjudicate an application for adjustment of status). Rather, the dispute concerns whether the All Writs Act, 28 U.S.C. § 1361, and the judicial review portions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provide this Court with subject matter jurisdiction over Abdi's claim.

It is also important to acknowledge that the case law on this issue is particularly unsettled, and the Court's research revealed no Circuit Court of Appeals decisions on point. Further, a nearly equal amount of district courts have found for and against jurisdiction. *See, e.g.*, *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 51 n.5 (D.D.C. 2008) (noting the split between district courts); *Badier v. Gonzales*, 475 F. Supp. 2d 1294, 1298-99 (N.D. Ga. 2006) (same). As such, the Court will first turn to the language of the statutes and then to the conclusions reached by the various courts which have addressed this issue.

---

[3]     As mentioned above, section 1447(b) provides jurisdiction over a naturalization application when the USCIS fails to make a determination within 120 days after the "examination" is conducted. Although the Court acknowledges that there is some split in authority whether the term "examination" refers to the interview, as Defendants construe the term, or the entire process of adjudication, *see Abuhadba v. Gonzales*, 512 F. Supp. 2d 1347, 1349 (N.D. Ga. 2007), Abdi concedes the point for present purposes.

Finally, the Court must note that neither Defendants nor Abdi distinguish between the Court's authority to compel the USCIS to adjudicate his application and the Court's authority to compel the FBI to complete his background check. *C.f.*, *Hamandi*, 550 F. Supp. 2d at 52. Because this distinction potentially bears on the Court's subject matter jurisdiction to hear Abdi's claims, and courts have a responsibility to assure themselves that subject matter jurisdiction exists, the Court will separately analyze whether subject matter jurisdiction exists with respect to each agency. *See id.*

I.      **The All Writs Act and the APA**

Under 28 U.S.C. § 1361, federal courts have original jurisdiction to hear "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The All Writs Act further provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Under this Circuit's case law, "[t]hree elements must exist before mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980).[4]

By contrast, the APA does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977). However, a federal district court may have federal question jurisdiction under 28 U.S.C. § 1331 over a claim that an agency has violated the APA.

---

[4]      The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Califano*, 430 U.S. at 107.  When, as here, a plaintiff seeks a mandatory injunction under the APA, this Court has found that the principles and standards for mandamus jurisdiction apply to determine jurisdiction for the APA claim.  *Gemini Realty, Inc. v. Gonzalez*, No. 6:06-cv-786-Orl-19DAB, 2006 WL 2927562, at *2 (M.D. Fla. Oct. 12, 2006) (citing *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995)).  Thus, in deciding whether jurisdiction lies to issue a mandatory injunction under the APA, this Court must return to the issue of whether it has mandamus jurisdiction.[5]

## II.      Jurisdiction to Compel the USCIS to Adjudicate Abdi's Application

Defendants argue that subject matter does not exist because: (1) Abdi has not shown a "clear and indisputable" right to relief; and (2) Abdi has not shown that Defendants have a clear duty to adjudicate his application in a certain time period.  (Doc. No. 13 at 4-6.)  Defendants similarly argue that jurisdiction is not made available through a violation of the APA because they did not fail to "take discrete action that [they were] required to take."  (*Id.* at 6 (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61, 64 (2004)).  Abdi responds that Defendants are compelled by 8 C.F.R. § 103.2(b)(18), a regulation governing the pace of naturalization decisions, to take action on his application.  (Doc. No. 14 at 9-10.)  Abdi contends that, because Defendants have a clear duty to adjudicate his case, this Court has the power under the All Writs Act and the APA to compel them to act.  (*Id.* at 16-18.)

---

[5]      In his Complaint, Abdi also contends that this Court has subject matter jurisdiction under the Declaratory Judgment Act.  (Doc. No. 1 ¶ 9.)  However, the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction.  *Skelly Oil Co. v. Phillips Petro. Co.*, 339 U.S. 667, 671-72 (1950).

A.      Abdi's Clear Right to Relief from the USCIS

Defendants contend that Abdi does not possess a clear right to relief under the first prong of the mandamus test, but they fail to elaborate further.  (Doc. No. 13 at 5 (solely analyzing the issue of duty to act).)  The Court's own research has found only a handful of district court cases in which the court decided the issue of mandamus jurisdiction on this first prong of the mandamus test.  *See, e.g.*, *Sawan v. Chertoff*, No. H-08-1550, 2008 WL 3852475, at *3 (S.D. Tex. Aug. 14, 2008) ("Sawan cannot show that judicial review is available . . . because he does not establish a clear right to relief.  The applicable statute contains no specific time period for the FBI to complete its name check investigation."); *Dorta v. Gonzales*, No. 07-21685, 2008 WL 131206, at *1 (S.D. Fla. Jan. 10, 2008) ("Plaintiff does not have a clear right to the relief requested because naturalization is a privilege."); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614 (E.D.N.C. 2007) ("Judicial review cannot be granted . . . because plaintiff has failed to meet the first requirement of showing [that] he has a clear right to the relief sought.  While it is true that naturalization applicants have a clear right to have their applications adjudicated, *see* U.S.C. § 1446, they do not have a right to have their application adjudicated within a specific time frame . . . .").

The reasoning employed by these cases is not persuasive.  As *Ibrahim* notes, applicants for naturalization have a right to have their applications adjudicated.  8 U.S.C. § 1446(d) ("The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied.").  The distinction the cases draw between the eventual adjudication of the application and the rate at which the adjudication occurs is inconsequential.  Both the denial of action and the failure to take required action can constitute "wrongs" under the APA.  *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008); *Mashapee Wampanog Tribal Council,*

*Inc. v. Norton*, 336 F.3d 1094, 1097, 1100 (D.C. Cir. 2003). In other words, deciding to move at a stationary rate, when one is required to move, is the same as deciding not to move at all. *See Norton*, 542 U.S. at 62-63 (explaining that the failure to act may be remedied under the APA when the particular action that the agency failed to take was discrete and legally required). Accordingly, Abdi's right to have his application adjudicated implicates a right to have the application adjudicated in a reasonable time. *Palamarachouk v. Chertoff*, — F. Supp. 2d —, No. 08-080-JJF, 2008 WL 2937541, at *6 (D. Del. July 30, 2008); *Hamandi*, 550 F. Supp. 2d at 51 (citing *Mashapee Wampanog Tribal Council, Inc.*, 335 F.3d at 1097, 1100).

### B.      The USCIS' Duty to Act

Defendants next argue that the USCIS has no duty to act, depriving this Court of subject matter jurisdiction under the All Writs Act and the APA. (Doc. No. 13 at 5.) Courts have reached varying conclusions about the USCIS' duty to adjudicate a naturalization application in a reasonable time. *Hamandi*, 550 F. Supp. 2d at 51 n.5 (noting the split between district courts).

As a general matter, the Supreme Court has indicated that courts should look to "agency regulations that have the force of law" and federal statutes to determine whether agency action is required by law. *Norton*, 542 U.S. at 65. The Court has also stated that an agency may use language in its decisions and promulgations that "creates a commitment binding on the agency." *Id.* at 71. Thus, when an agency regulation uses mandatory language like "shall," a court should find that there is a legal duty to act. *See id.*; *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) ("[The agency's] insistence that it is not obligated to address an application filed under one of its own regulations allowing requests for discretionary relief . . . is without merit."); *Singh v. Still*,

470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (noting that the USCIS conceded a mandatory duty to act on adjustment of immigrant status applications).

There are several sources of law that impose a duty on the USCIS to adjudicate Abdi's application.  First, as mentioned above, 8 U.S.C. § 1446(d) provides that the examiner of an application for naturalization "shall make a determination as to whether the application should be granted or denied, with reasons therefor."  Similarly, subsection (b) of the same statute requires the examiner to conduct an "examination" as part of this process.  In addition, several regulatory provisions provide guidance.  Under 8 C.F.R. § 316.14(b)(1), "[s]ubject to supervisory review, the employee of [USCIS] who conducts the examination [on an application for naturalization] shall determine whether to grant or deny the application, and shall provide reasons for the determination . . . ."  And under  8 C.F.R. § 335.3(a), the USCIS "shall grant the application if the applicant has complied with all requirements for naturalization."

As demonstrated by the repeated use of the word "shall," these statutes and regulatory provisions require the USCIS to adjudicate Abdi's application for naturalization.  *Hamandi*, 550 F. Supp. 2d at 50-51.  The point of divergence between the district courts appears to be whether the USCIS' duty to act implicates a duty to act within a reasonable time.  Because long-standing principles of administrative law establish that agencies may not unreasonably delay required action, the Court concludes that the better reasoned position is that the USCIS has a non-discretionary duty adjudicate Abdi's application within a reasonable amount of time.[6]  *E.g.*, *Palamarachouk*, 2008 WL

---

[6]       Abdi argues that the USCIS is compelled by 8 C.F.R. § 103.2(b)(18) to adhere to a certain timeline for adjudicating a naturalization application that has been pending for more than one year.  (Doc. No. 14 at 9-10.)  This Court has previously ruled that section 103.2(b)(18) allows the USCIS discretion in setting the pace at which it adjudicates applications for adjustment of status (to
(continued...)

2937541, at *5-6; *Hamandi*, 550 F. Supp. 2d at 49-51; *Wang v. Mukasey*, No. C-07-06266 RMW, 2008 WL 1767042, at *3 (N.D. Cal Apr. 16, 2008); *Zhu v. Chertoff*, No. C-07-05570RMW, 2008 WL 1774166, at *3 (N.D. Cal. Apr. 16, 2008); *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS, 2008 WL 540685, at *5-6 (E.D. Cal. Feb. 28, 2008); *Ali v. Chertoff*, No. 6:07-cv-1341-Orl-22KRS, *slip. op.* at 6 (M.D. Fla. Jan. 31, 2008).  In reaching this conclusion, the Court disagrees with the reasoning found in several lines of district court cases.

One such line of cases concludes that immigration authorities may have a duty to adjudicate an application, but that courts lack jurisdiction to review the pace of adjudication because the USCIS is not subject to an explicit deadline.  *Khorsravani v. Chertoff*, No. 08-CV-0220 W(CAB), 2008 WL 2047996, at *2 (S.D. Cal. May 13, 2008); *Saini v. Heinauer*, 552 F. Supp. 2d 974, 978-99 (D. Neb. 2008); *Alzauraiki v. Heinauer*, 544 F. Supp. 2d 862, 865-66 (D. Neb. 2008).  This conclusion appears to be inconsistent with several sections of the APA.  As a general requirement for agencies, the APA provides:  "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  A second APA provision governing judicial review states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The

---

[6](...continued)
which the regulation also applies), provided that the adjudication has not taken longer than a year. *Ren*, 2008 WL 191010, at *8.  However, the Court noted that unless the USCIS proves that certain conditions are met, the provision does not apply to applications pending for more than one year. *Id.* In reaching this conclusion, the Court did not consider whether the regulation might also impart a duty on the USCIS to adjudicate an application that has been pending for more than one year.  *See id.*  In this case, the Court finds it unnecessary to answer this question because the issue of subject matter jurisdiction is resolved by the APA's clear instruction that the USCIS must adjudicate an application in a reasonable time.

reviewing court shall--(1) compel agency action unlawfully withheld or unreasonably delayed . . . .

*Id.* § 706. Courts agree that the terms "reasonable time" and "unreasonably delayed" contemplate review even when the agency is not subject to an explicit deadline. *Gen. Motors Corp. v. United States*, 496 U.S. 530, (1990) ("Although the 4-month deadline does not apply, EPA remains subject to the Administrative Procedure Act's . . . statutory requirements of timeliness."); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999); *Tang*, 493 F. Supp. 2d 148, 155 (D. Mass. 2007) ("Notably, Congress did not say 'agency action unlawfully withheld or delayed,' as it could have if it meant to allow judicial review only where agency delay violated a fixed deadline set out in a separate statute or regulation. The deliberate insertion of the word 'unreasonably' contemplates that reviewing courts will delve into the question of what is 'reasonable' in the pacing of adjudication."); *see also* 73 C.J.S. Public Administrative Law and Procedure § 372 (2008) ("Delay or inaction, violating a statutory requirement that an agency proceed with reasonable dispatch, and amounting to a legal wrong, is a sufficient final action for review."). Thus, the concept of an unreasonable delay exists separate and distinct from any statutorily imposed deadline, and the USCIS is required to act within a reasonable time even if the agency is not bound by a explicit deadline. *Hamandi*, 550 F. Supp. 2d at 50-51; *Ren*, 2008 WL 191010, at *9 (USCIS must adjudicate an application for adjustment of status within a reasonable time). As such, courts have subject matter jurisdiction to compel the USCIS to adjudicate an application for naturalization within a reasonable amount of time.

Several cases have also concluded that the USCIS has discretion when to schedule an interview and therefore cannot be compelled to schedule an interview at a particular time. *Khosravani*, 2008 WL 2047996 at *2; *Badier*, 475 F. Supp. 2d at 1299 (collecting cases). This

reasoning is similarly unpersuasive.  When determining whether jurisdiction exists for these types

of claims, courts cannot expect federal statutes or regulations to delineate exactly how and when the

agency is to accomplish each step necessary to adjudicate an application.  Any mandatory task can

be subdivided into numerous discretionary decisions.  Critically, Congress has stated in the INA that

the USCIS must adjudicate applications for naturalization, 8 U.S.C. § 1446(d), and it stated in the

APA that agencies must complete mandatory actions within a reasonable time.  5 U.S.C. §§ 555(b),

706(1).  Naturally, then, the USCIS must complete the individual steps needed to adjudicate Abdi's

application in manner that allows it to complete the overall task in a reasonable time.

Finally, some courts have concluded that the USCIS is barred from scheduling an interview

until the FBI completes a background check.  *Kakushadze v. Chertoff*, No. 07 Civ. 8338(DF), 2008

WL 2885292, at *7 (S.D.N.Y. July 25, 2008); *Qadir v. Gonzales*, No. 07-3741 (FLW), 2008 WL

2625314, at *4 (D.N.J. June 27, 2008).  Relying on 8 C.F.R. § 335.2(b), these courts have concluded

that the USCIS therefore has no duty to schedule an interview when the background check remains

pending.  Again, the Court finds this reasoning unpersuasive.  As a court in this District has noted,

nothing in this regulation prevents the USCIS from ordering an expedited background check from

the FBI for the purpose of allowing the USCIS to complete its mandatory duty to adjudicate an

application for naturalization within a reasonable time.[7]  *Ali*, *slip. op.* at 7-8.

---

[7]        The Court disagrees with another district court which held that the USCIS has
discretion whether to order an expedited background check and therefore may not be compelled by
mandamus to do so.  *Du v. Chertoff*, 559 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2008).  As stated
above, the USCIS lacks discretion to adjudicate applications for naturalization in a manner which
runs afoul of the APA's unreasonable delay standard.  Thus, the USCIS' duty to adjudicate
naturalization applications may require the agency to order an expedited background check when
an application has been pending so long as to constitute unreasonable delay.  However, at this point,
the Court expresses no opinion as to what length of time would constitute an unreasonable delay.

III.     **Subject Matter Jurisdiction over Abdi's Claim Against the FBI**

Defendants do not distinguish between Abdi's claims against the USCIS officials and his claims against the FBI officials.  (*See* Doc. No. 13 at 1-7.)  Nevertheless, because the distinctions between each agency's respective duties potentially impact the Court's subject matter jurisdiction to hear Abdi's claims, *see Hamandi*, 550 F. Supp. 2d at 52, the Court will examine the issue *sua sponte*.

A number of courts have held that the FBI does not have a legally-imposed duty to process background checks.  *Hamandi*, 550 F. Supp. 2d at 52; *Sinha v. Upchurch*, No. 1:07CV2274, 2007 WL 4322225, at *5 (N.D. Ohio Dec. 7, 2007);  *Antonishin v. Keisler*, No. 06CV2518, 2007 WL 2788841, at *6 (N.D. Ill. Sept. 20, 2007).  Unlike the USCIS, the FBI's role in the adjudication process is not subject to mandatory language appearing in a statute or regulation.  The courts which have found a mandatory duty on the part of the FBI have inferred its existence from several Congressional enactments and agency regulations.  *See, e.g.*, *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400 (E.D. Pa. 2007).  These courts have particularly focused on: (1) the 1998 Department of Justice Appropriations Act, 111 Stat. at 2448, which prohibits the USCIS from using any funds to complete adjudication of naturalization applications until it has received confirmation from the FBI that full criminal background checks have been completed; (2) the 1991 Department of Justice Appropriations Act, Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990), which authorized the FBI to establish and collect fees to cover name check costs;[8] and (3) 8 C.F.R. §§ 316.4 and 334.2, which direct the USCIS to collect a fee for applications and to turn over a portion of that fee to the FBI for

_____

[8]     The relevant portions of the 1991 and 1998 Department of Justice Appropriation Acts are not codified in the United States Code.

-14-

fingerprint and name checks.  However, as several other courts have noted, these enactments appear to be directed to the USCIS and "establish conditions that USCIS must satisfy to access appropriated funds."  *Hamandi*, 550 F. Supp. 2d at 52 (quoting *Antonishin*, 2007 WL 2788841, at *6).  They do not direct the FBI to complete a certain task.  Accordingly, the FBI does not have a mandatory duty with respect to Abdi's application for naturalization that may be compelled by mandamus, and the Court therefore lacks subject matter jurisdiction over Abdi's claim against the FBI Defendants.[9]

### Conclusion

The Motion of Defendants to Dismiss (Doc. No. 13, filed May 27, 2008) is **GRANTED in part and DENIED in part**.  The claims against Defendants Robert Mueller and Michael B. Mukasey are **DISMISSED without prejudice** for lack of subject matter jurisdiction.  All other Defendants are required to file an Answer to the Complaint within ten (10) days from the date of this Order.  By separate notice, the Court will schedule an evidentiary hearing to: (1) evaluate the reasonableness of Defendants' delay in adjudicating Plaintiff's N-400 application; and (2) to determine what relief, if any, should be granted.[10]

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 20, 2008.

**PATRICIA C. FAWSETT, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9]     Defendants Robert Mueller and Michael B. Mukasey.

[10]     The parties should be prepared to address the effect of 8 C.F.R. § 335.2(b) on this Court's ability to grant relief.  *See Ali*, *slip op.* at 7-9 (determining that relief can be granted under "any interpretation" of the regulation).

Copies furnished to:

Counsel of Record